# United States District Court
## for the Northern District of Oklahoma

Case No. 25-cv-421-JDR-SH

Ashlee Hall; Hall Law Group, PLLC,

*Plaintiffs,*

*versus*

Christopher Marston; Diana Mullins; Exemplar Law, LLC; Exemplar Companies, PBC,

*Defendants.*

### OPINION AND ORDER

Plaintiffs Ashlee Hall and Hall Law Group, PLLC, allege that Defendants Christopher Marston, Diana Mullins, Exemplar Law, LLC, and Exemplar Companies, PBC, conspired to deny Ms. Hall access to her legal clients after she left Exemplar Law, and allege various federal and state law causes of action against the Defendants as a result. Dkt. 2 at 32-51.[1] Mr. Marston and Ms. Mullins have moved to dismiss Ms. Hall's claims against them. Dkt. 15. Exemplar Law and Exemplar Companies (collectively "Exemplar") have filed a counterclaim against Ms. Hall and Hall Law alleging breach of contract, malicious interference with contractual relations, and breach of fiduciary duty. Dkt. 19. Ms. Hall moves to dismiss Exemplar's counterclaims. Dkt. 28. The Court will first consider the motion to dismiss Ms. Hall's claims against Mr. Marston and Ms. Mullins, and then Ms. Hall's motion to dismiss Exemplar's claims against both Hall Law and her.

---

[1] All citations use CM/ECF pagination.

No. 25-cv-421

The Court finds that Ms. Hall's complaint states claims against both Mr. Marston and Ms. Mullins and denies their motion to dismiss. Dkt. 15. The Court also finds that Exemplar's counterclaim does not state a claim upon which relief could be granted against Hall Law and does not state a claim for either breach of contract or malicious interference with contract against Ms. Hall. But Exemplar properly asserts a counterclaim against Ms. Hall for breach of fiduciary duty. The Court therefore grants in part and denies in part Ms. Hall's motion to dismiss. Dkt. 28. Exemplar may amend its counterclaims to cure the deficiencies outlined in this opinion by February 27, 2026. If it does not do so by that date, this order will become final.

I

Ms. Hall alleges that she joined Exemplar as its head of tax law in February 2025. Dkt. 2 at 2. As part of her employment agreement, Exemplar and Ms. Hall agreed that Ms. Hall's pre-existing clients were to continue to be represented by Ms. Hall as part of her personal book of business, and she continued to be those clients' attorney of record before the IRS. *Id.* at 3. Prior to her employment, Ms. Hall had established accounts with legal and tax software providers Clio and PitBullTax that she used to maintain and manage client matters, communications, contacts, and assorted confidential information. *Id.* Ms. Hall elected to continue using her existing Clio and PitBullTax accounts to service her pre-existing client base upon her employment by Exemplar. *Id.* Ms. Hall alleges that she never received new accounts or sign-in information for Clio or PitBullTax from Exemplar and continued to use her personal accounts licensed to Hall Law and her. *Id.* at 4. Ms. Hall also states that she never provided her Clio login information to Exemplar or any Exemplar employees but shared her login credentials to PitBullTax with Ms. Mullins "to change billing information . . . and add requisite additional licenses." *Id.*

Ms. Hall resigned from Exemplar in July 2025, less than five months after she joined the firm, citing Exemplar's failure to provide her with

2

"operational and staffing support" to manage a tax law division. *Id.* She alleges that after her resignation, Exemplar employees, including Ms. Mullins, "gained unauthorized access to [her] C[lio] and PitBullTax accounts and changed [her] login credentials to that of Exemplar's CEO Mr. Marston." *Id.* at 4, 15. Clio and PitBullTax subsequently refused to restore Ms. Hall's access to the accounts without either a court order or written agreement between her and Exemplar. *Id.* at 5. Ms. Hall then sent Mr. Marston a cease-and-desist letter to restore her access to the accounts; Mr. Marston responded by threatening legal action against Ms. Hall. *Id.* at 19-20. Ms. Hall alleges that she "experienced severe anxiety, fear, stress, panic, nervousness, concern, and desperation" along with "severe sleep deprivation and mental anguish" due to her inability to conduct her business and represent her clients because of her exclusion from her Clio and PitBullTax accounts. *Id.* at 15-16.

Ms. Hall alleges that Defendants violated the Stored Communications Act when they gained unauthorized access to Ms. Hall's Clio and PitBullTax accounts and "obtained [Ms. Hall's] confidential, proprietary, and sensitive business records." *Id.* at 30-32. Ms. Hall also claims that the Defendants engaged in conversion of her property under Oklahoma law, *id.* at 35-37, and engaged in a conspiracy to convert her property, *id.* at 37-38.

Ms. Hall likewise alleges that Mr. Marston and Exemplar violated the Computer Fraud and Abuse Act. *Id.* at 32-35. She also claims that Mr. Marston and Exemplar tortiously interfered with her contracts and business relations, *id.* at 38-41, tortiously interfered with her prospective economic advantage, *id.* at 41-43, invaded her privacy, *id.* at 43-44, and intentionally inflicted emotional distress upon her, *id.* at 44-48. Ms. Hall also requests the Court grant her an injunction and declaratory relief confirming that she is the legal owner of the Clio and PitBullTax accounts at issue, order all Defendants to cease accessing her accounts or using any information gleaned from those accounts, and produce a list of information that the Defendants gleaned or modified from the accounts. *Id.* at 49-51.

No. 25-cv-421

## II

Mr. Marston and Ms. Mullins move to dismiss Ms. Hall's claims against them, arguing they are immune from personal liability under Oklahoma law because they are employees of Exemplar, and as employees, they assert they are not liable to Ms. Hall because their alleged actions were on Exemplar's behalf. Dkt. 15.

Neither Ms. Mullins nor Mr. Marston argues that the substance of Ms. Hall's complaint does not plead claims for relief. Instead, they each argue they are immune from liability. Ms. Mullins states that she cannot be held individually liable on any allegation because any action she took was "*at Mr. Marston's direction*" and for neither personal gain nor to Exemplar's detriment. Dkt. 15 at 4 (emphasis in original). She cites multiple cases to support her position, including *Martin v. Johnson*, 1998 OK 127, ¶ 28, 975 P.2d 889, 895 (regarding the liability of a school district) and *Benshoof v. Niles*, 2016 OK CIV APP 57, ¶ 21, 380 P.3d 902, 907 (regarding the liability of a sheriff).[2] But the cases Ms. Mullins cites to support her immunity are inapposite. The cited cases involved employees of Oklahoma public entities whose personal tort liability is limited by the Oklahoma Governmental Tort Claims Act.[3] Ms. Mullins does not cite to a single case or provision of Oklahoma law stating that an

---

[2] Both Ms. Mullins and Mr. Marston base their arguments for immunity in Oklahoma law. Insofar as the Court finds that they are not immune from Ms. Hall's claims under Oklahoma law, Ms. Hall has also levied federal claims against both defendants. Dkt. 2. Oklahoma law cannot grant immunity from a federal statute, so even if Ms. Mullins and Mr. Marston were immune under Oklahoma law, that immunity would not stretch to Ms. Hall's claims under the Stored Communications Act and the Computer Fraud and Abuse Act. *Doe v. Dynamic Physical Therapy, LLC*, No. 25–180, 2025 WL 3506945, at *1 (U.S. Dec. 8, 2025) (holding "a State has no power to confer immunity from federal causes of action."). Neither party has given the Court any alternative rationale for why they would be immune from Ms. Hall's federal claims.

[3] Ms. Mullins and Mr. Marston argue that they have not argued the applicability of the OGTCA to this action. Dkt. 31 at 3 n.1. But their near-exclusive reliance on cases applying the OGTCA indicates otherwise. In any event, cases applying the OGTCA are not relevant to a case relating to the actions of employees of an out-of-state private law firm.

employee of a private entity has immunity because that employee's alleged tortious action was done at the direction or for the benefit of her employer.

Ms. Mullins further argues that because any action she took was as an agent of either Mr. Marston or Exemplar, she is relieved from liability under the doctrine of respondeat superior, and the liability instead attaches to whichever principal in whose interests she acted. Dkt. 15 at 3-4. But this misunderstands the doctrine. Respondeat superior permits a suit against a principal for its agent's actions, but it does not shield the agent against liability for a tort it committed on a principal's behalf. The Oklahoma Supreme Court has made it clear that "[o]ne who commits a *tortious* act while acting as agent for another within the scope of his authority is individually liable." *Shebester v. Triple Crown Insurers*, 1992 OK 20, ¶ 16 n.21, 826 P.2d 603, 609 n.21 (emphasis in original). Ms. Mullins cannot argue that she is immune from liability for any torts she committed simply because she did so at the direction of a principal.

Mr. Marston, for his part, argues he is immune from liability because he is the CEO of Exemplar Companies, PBC, and the Managing Member of Exemplar, LLC, and that all actions he took were undertaken "explicitly on behalf of [Exemplar] and in accordance with his duties and responsibility to [Exemplar]." Dkt. 15 at 4.[4] He then cites two provisions of Oklahoma law, which he claims preclude filing suit against an officer of a corporation or a

---

[4] Mr. Marston and Ms. Mullins attached an affidavit to their motion stating that their actions were done in their respective roles and in the interests of Exemplar alone. Dkt. 15-1. There are two problems with this affidavit. First, when considering a motion to dismiss, a Court may look only to the four corners of the complaint and may not consider extrinsic evidence provided by the opposing party. *Brown v. City of Tulsa*, 124 F.4th 1251, 1264 (10th Cir. 2025). So the Court may not consider this affidavit in its deliberations. Second, even if the Court were to consider this affidavit, the mere fact that Mr. Marston and Ms. Mullins acted on behalf of Exemplar does not shield them from liability for tortious actions they personally committed. *Smoot v. B & J Restoration Servs., Inc.*, 2012 OK CIV APP 58, ¶ 16, 279 P.3d 805, 814.

member of an LLC for torts committed on behalf of a corporate entity. *Id.* at 4-5.

Considering each in turn, he first cites Okla. Stat. tit. 18 § 1124(B), which reads "No suit shall be brought against any officer, director or shareholder for any debt of a corporation of which he is an officer, director or shareholder, until judgment is obtained therefore against the corporation and execution thereon returned unsatisfied." Section 1124(B) is explicitly about the "debt" of a corporation and states that if a corporation owes a debt, a director, officer, or shareholder cannot be held responsible for the corporation's debts until and unless the corporation fails to pay them. But this case is not about a corporate debt, and so section 1124(B) is irrelevant.

Mr. Marston next argues that Okla. Stat. tit. 18 § 682(B) precludes suit, as it reads:

> No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation . . . [t]his provision includes, but is not limited to, claims based on vicarious liability . . . nothing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct . . . not within the scope of their role.[5]

At first glance, this statute seems to prohibit Ms. Hall's state-law claims against Mr. Marston. But this statute "prohibits suits based solely on" a defendant's status as an officer, shareholder, or LLC member, and "does not prevent a person from being sued directly for his own conduct." *Dennis v. Good Deal Charlie, Inc.*, No. 20-cv-00295-GKF-JFJ, 2021 WL 815841, at *6 (N.D. Okla. Mar. 3, 2021). It likewise "does not preclude imposition of personal tort liability on an officer, director, or shareholder for the person's acts outside the scope of his or her role as an officer, director, or shareholder." *Id.*

---

[5] Okla. Stat. tit. 18 § 682(C) extends the same protection to LLC members.

And Oklahoma courts have held that "corporate officers may be individually liable for their tortious conduct even if they are acting on behalf of the corporation and regardless of whether a corporation may be held vicariously liable for the torts of its officers and directors." *Smoot v. B & J Restoration Servs., Inc.*, 2012 OK CIV APP 58, ¶ 16, 279 P.3d 805, 814.

Here, in addition to her federal claims, Ms. Hall has alleged that Mr. Marsden engaged in conversion, conspiracy, tortious interference with contract, business relationship, and prospective economic advantage, invasion of privacy, and intentional infliction of emotional distress. Dkt. 2 at 33-51. Each of these is a tort, and *Smoot* expressly precludes Mr. Marsden from relying on his status as an officer or LLC member to seek immunity.[6] 2012 OK CIV APP 58, ¶ 16, 279 P.3d 805, 814.

Neither Ms. Mullins nor Mr. Marston is immune from liability under Oklahoma law because of their position as employee, corporate officer, or LLC member. They have also failed to give any reason why the Court should dismiss Ms. Hall's federal claims against them. The Court denies Ms. Mullins's and Mr. Marston's motion to dismiss.[7]

---

[6] Mr. Marston and Ms. Hall focus most of their legal arguments on the concept of piercing the corporate veil. Dkts. 15, 29. But the corporate veil doctrine protects a corporate shareholder, director, or officer from liability for the corporation's torts. It does not provide a shield for a tortfeasor shareholder, director, or officer to avoid liability for torts they committed. *Lockard Aircraft Sales Co. v. Dumont Aircraft Sales, LLC*, No. 16-cv-469-JED-FHM, 2019 WL 4179515, at *2 (N.D. Okla. Sept. 3, 2019) (holding that a "corporate officer can be held personally liable for the torts he commits and cannot shield himself behind a corporation when he is a participant"). Because Ms. Hall has pleaded that Mr. Marston is an individual tortfeasor separate from Exemplar, the question of the corporate veil is irrelevant to her claims. Dkt. 2.

[7] In their reply, Ms. Mullins and Mr. Marston argue that because Ms. Mullins and Ms. Hall are both residents of Oklahoma, this Court lacks diversity jurisdiction. Dkt. 31 at 4 n.2. This is true. But Ms. Hall has sued all Defendants under the Stored Communications Act, a federal statute. Dkt. 2 at 30-31; 18 U.S.C. §§ 1701 *et seq.* This Court thus has federal question jurisdiction upon that claim (and over her Computer Fraud and Abuse Act claim)

*(footnote continues)*

No. 25-cv-421

III

In its answer, Exemplar raises claims against both Ms. Hall and Hall Law for breach of contract, malicious interference with contractual relations, and breach of fiduciary duty. Dkt. 19 at 9-11. The Court finds that Exemplar does not state claims upon which relief can be granted against Hall Law, and that Exemplar's allegations that Ms. Hall breached her contract and maliciously interfered with Exemplar's contracts do not state a claim. The Court grants Ms. Hall's motion to dismiss these causes of action. But the Court finds that Exemplar has stated a claim for breach of fiduciary duty and denies Ms. Hall's motion as to that claim.

A

Exemplar pleads that Ms. Hall was hired as a fiduciary. Dkt. 19 at 8. It then alleges that Ms. Hall executed a "Non-Solicitation and Client Buyout Agreement" with Exemplar when she joined the company. *Id.* at 9. Exemplar pleads that Ms. Hall converted "clients to [Ms.] Hall's personal benefit," "falsely claim[ed] that Exemplar was not authorized to access" the disputed Clio account, leading Clio to suspend it and prevent Exemplar from accessing information within it, "deleted over 20 years' worth of confidential client information in an effort to sabotage Exemplar," and "solicited Exemplar clients to leave Exemplar and to join her" at Hall Law. *Id.*

B

To survive a motion to dismiss, Exemplar's counterclaims must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The allegations must be enough that, if assumed to be true, the [counterclaimant] plausibly (not just speculatively) has a claim for relief." *Robbins*, 519 F.3d at 1247. In other words, the Court must determine whether, taking all well-pleaded allegations as true,

---

and consequently has supplemental jurisdiction over Ms. Hall's state-law claims against Ms. Mullins, even without complete diversity.

8

the complaint provides a "reason to believe that [Exemplar] has a reasonable likelihood of mustering factual support for [its] claims." *Ridge at Red Hawk, L.L.C. v. Schnieder*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Exemplar alleges breach of contract, malicious interference with contract, and breach of fiduciary duty claims against both Ms. Hall and Hall Law. Ms. Hall argues that her non-solicitation and buyout agreement with Exemplar is unenforceable as a matter of law, that Exemplar did not identify any other breach of her employment agreement, that Exemplar failed to allege facts that Ms. Hall maliciously interfered with Exemplar's contractual relations, and that Exemplar failed to allege that Ms. Hall owed it any fiduciary duty. Dkt. 28. Ms. Hall also argues that Exemplar does not state a claim upon which relief could be granted against Hall Law on any of its theories. *Id.* The Court will address each of her arguments in turn.

1

First, Ms. Hall asserts that the non-solicitation and buyout agreement with Exemplar is unenforceable as a matter of Oklahoma law, citing *TruGreen Ltd. P'ship v. Oklahoma Landscape, Inc.*, 526 F. Supp. 3d 1080, 1090 (N.D. Okla. 2021) for the proposition that these agreements violate Oklahoma public policy.[8] Dkt. 28 at 6-10. Further, she argues that the particular application of these agreements to attorneys violates ethical rules permitting clients to choose their representation. *Id.* Exemplar argues that Okla. Stat. tit. 15 § 219(A) permits enforcement of its non-solicitation agreement. Dkt. 30 at 3-4.

Although Oklahoma law permits non-solicitation agreements in normal cases under Okla. Stat. tit. 15 § 219(A), the Oklahoma Rules of Professional Conduct expressly prohibit employment agreements that "restrict[]

---

[8] Exemplar did not attach the non-solicitation agreement to its counterclaim, but Ms. Hall included it as an exhibit to her motion. Dkts. 19, 28. Although the Court may consider extrinsic documents like contracts when necessary to resolve the case, the Court need not and does not consider it because such agreements are expressly unenforceable against attorneys under Oklahoma law.

No. 25-cv-421

the rights of a lawyer to practice after termination of the [employment] relationship." OK ST RPC Rule 5.6. An agreement that restricts Ms. Hall from soliciting clients "restricts the rights of a lawyer to practice" and the rights of clients to their choice of representation and is unenforceable under Oklahoma law. *Id.* cmt. 1. Exemplar's argument that Ms. Hall violated her employment agreement by soliciting clients thus does not state a claim upon which relief can be granted.

2

Next, Ms. Hall argues that Exemplar has not pleaded any other contractual violation. To state a claim for breach of contract, Exemplar "must allege that [Exemplar and Ms. Hall] had a valid contract, a breach of the contract occurred, and [Exemplar] suffered damages resulting from the breach." *McGregor v. Nat'l Steak Processors, Inc.*, No. 11-cv-0570-CVE-TLW, 2012 WL 2904547, at *3 (N.D. Okla. July 16, 2012). Exemplar argues that "Ms. Hall's contract contains other provisions independent of the non-solicitation provision that Ms. Hall breached." Dkt. 30 at 3. But Exemplar has not specified these provisions within the four corners of its counterclaim, nor has it provided the Court with the contract that it claims Ms. Hall violated. Dkt. 19. In fact, Exemplar's counterclaim stumbles on the first prong because the only agreement mentioned in the counterclaim is the "Non-Solicitation and Client Buyout Agreement."[9] *Id.* at 9. Exemplar cannot try to save a deficient counterclaim by arguing in its response that Ms. Hall violated a contract whose existence it has not properly pleaded in its counterclaim.

---

[9] Exemplar does refer to an "employment Agreement" in its counterclaim. Dkt. 19 at 9, 10. But "Agreement" is a defined term in the counterclaim, specifying the "Non-Solicitation and Client Buyout Agreement." *Id.* at 9. Exemplar has not alleged the existence of any other employment agreement between it and Ms. Hall, let alone told the Court what provisions Ms. Hall allegedly breached. Even assuming that Exemplar intended to reference a separate employment agreement, merely stating that "[Ms.] Hall has violated her employment Agreement in excess of five hundred (500) times" or that there are "other provisions . . . that Ms. Hall breached" is insufficient to state a claim. *Id.* at 9-10.

Exemplar argues that dismissal of its counterclaim based on Ms. Hall's motion would be improper because it would "dismiss the Defendants' claim for breach of contract based upon her naked assertion that the entire contract is contrary to Oklahoma law." Dkt. 30 at 3. But the only contract that Exemplar has properly alleged existed, let alone that Exemplar has properly alleged was breached, was the non-solicitation agreement. To state a facially plausible claim for breach of contract, a plaintiff must allege facts showing the existence of a contract between the parties. *McGregor*, 2012 WL 2904547, at *3. The plaintiff must also allege the defendant's breach of the contract, which requires at least some specificity on the contractual provision allegedly breached. *Id.* Even assuming arguendo that Exemplar has properly alleged the existence of a contract separate from the non-solicitation agreement, Exemplar's bare statement that Ms. Hall breached that contract is a "conclusory allegation [ ] without supporting factual averments," and is "insufficient to state a claim on which relief can be based." *Washington v. Washington*, 605 F. App'x 716, 718 (10th Cir. 2015) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)) (omission in original).

Exemplar has not alleged the existence of any contract beyond the "Non-Solicitation and Client Buyout Agreement" and has not pleaded sufficient facts to plausibly allege that Ms. Hall breached any other contract that did exist. Exemplar therefore has not alleged a breach of contract claim upon which relief can be granted. The Court grants Ms. Hall's motion to dismiss Exemplar's breach of contract claim.

3

Next, Ms. Hall argues that Exemplar has not alleged facts to state a claim that she interfered with Exemplar's contractual relations intentionally or maliciously. To state a claim for malicious interference with contractual relations, a party must show "(1) that the plaintiff had a business or contractual right that was interfered with, (2) that the interference was malicious and wrongful, and that such interference was neither justified, privileged nor

No. 25-cv-421

excusable, and (3) that damage was proximately sustained as the result of interference." *James Energy Co. v. HCG Energy Corp.*, 1992 OK 117, ¶ 29, 847 P.2d 333, 340, *as modified on reh'g* (Mar. 2, 1993). The substance of Exemplar's claim is that Ms. Hall "interfered with [Exemplar's contractual] relationships by soliciting . . . clients to leave Exemplar." Dkt. 19 at 10. Exemplar has pleaded that it had contracts with which Ms. Hall interfered by soliciting those clients to leave Exemplar for Hall Law; the Court will therefore move to the next prong. *Id.*

"The element of malice, for malicious interference, is defined as an unreasonable and wrongful act done intentionally" and "necessarily involves some degree of bad faith." *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 14, 212 P.3d 1158, 1165. Exemplar's counterclaim for malicious interference only indicates that it relates to Ms. Hall's solicitation of clients. Dkt. 19 at 10. Exemplar alleges that Ms. Hall solicited clients to leave Exemplar and to join her when she was still employed at Exemplar. *Id.* at 9. It further alleges that Ms. Hall "enlisted Exemplar legal assistant Summer Lopez to solicit Exemplar clients to leave Exemplar" when both were employed by Exemplar. *Id.*

Exemplar does not cite, and the Court cannot locate, any precedent or statute in Oklahoma law holding that mere solicitation of a client of an attorney's present firm to leave with the attorney is unreasonable and wrongful. The Oklahoma Rules of Professional Conduct permit solicitation of professional employment by an attorney when the client contacted has a "prior professional relationship with the lawyer." OK ST RPC Rule 7.3(a).

Ms. Hall's alleged solicitation of clients while she was employed by Exemplar is not barred by the Oklahoma Rules of Professional Conduct or Oklahoma law, or otherwise "unreasonable and wrongful" based on the facts pleaded in Exemplar's counterclaim. The Court is unwilling to infer that the alleged solicitation could be the basis for a malicious interference with contract claim without additional facts that plausibly indicate Ms. Hall's actions

No. 25-cv-421

met the malice standard.[10] And the Court reads the Oklahoma Rules of Professional Conduct as protecting attorneys from suits based on their otherwise-lawful solicitation of clients because to do otherwise would impermissibly impede a client's right to choose its own representation. OK ST RPC Rule 5.6 cmt. 1.[11] The Court finds that Exemplar has not stated a malicious interference with contractual relations claim upon which relief can be granted, and grants Ms. Hall's motion to dismiss the claim.

4

Next, Ms. Hall argues that Exemplar has not sufficiently alleged the existence of a fiduciary duty that she could have breached. Dkt. 28 at 13. Exemplar states in its counterclaim that "[Ms.] Hall was a fiduciary, sharing in the profits of [Exemplar]" and that Ms. Hall's "employment Agreement and relationship with Exemplar imposed fiduciary obligations upon her with respect to Exemplar, its employees, its clients, and its confidential business information and processes." Dkt. 15 at 8, 10. It further alleges that Ms. Hall "breached those obligations on numerous occasions" but does not specify which of the alleged actions breaches any fiduciary obligation. *Id.* at 10.

---

[10] In response, Exemplar argues that it has given Ms. Hall "sufficient notice to defend the allegations made against her" and does not attempt to rebut Ms. Hall's argument that Exemplar has failed to state a claim because it did not allege sufficient facts to argue that Ms. Hall's actions were unreasonable and wrongful. Dkt. 30 at 3. The standard for a complaint is not "sufficient notice" for Ms. Hall to be able to respond; rather, Exemplar must plead facts sufficient to support allegations that permit the Court to find that it "plausibly . . . has a claim for relief." *Robbins*, 519 F.3d at 1247. The Court cannot find that Exemplar has a plausible claim for relief for malicious interference with contract when it does not allege facts in its counterclaim to indicate that Ms. Hall's alleged solicitation of its clients was unreasonable and wrongful.

[11] Permitting a malicious interference claim for an otherwise-lawful solicitation of clients would render Rule 5.6 a dead letter, as any plaintiff law firm seeking to punish an attorney for leaving with clients would be able to argue that solicitation of a client to depart with the attorney would qualify as malicious interference, subverting the public policy rationale supporting client choice of attorney underlying Rule 5.6.

No. 25-cv-421

To assert a claim for breach of fiduciary duty, Exemplar must plead that "(1) a fiduciary relationship existed between the plaintiff and the defendant that created a fiduciary duty that the defendant owed to the plaintiff; (2) the defendant breached the fiduciary duty to the plaintiff; and (3) the breach of the fiduciary duty was the direct cause of damages to plaintiff." *N. Am. Ins. Agency, Inc. v. Bates*, No. CIV-12-544-M, 2013 WL 6150781, at *8 (W.D. Okla. Nov. 22, 2013). Employees generally owe a duty of loyalty to their employer.[12] *United Built Homes, L.L.C. v. Middleton*, No. CIV-20-722-J, 2021 WL 6328014, at *3 (W.D. Okla. Nov. 2, 2021). Partners in a partnership also owe a duty of good faith and fair dealing to the other partners and the partnership as a whole. *Haggard v. Harlin*, No. CIV-06-615-M, 2007 WL 9711143, at *3 (W.D. Okla. Sept. 19, 2007).

Construing the evidence most favorably to Exemplar, Ms. Hall was hired as a partner, and she "shar[ed] in the profits of [Exemplar]" with oversight responsibility within the firm. Dkt. 15 at 8. She thus owed Exemplar a fiduciary duty beyond the basic duty of loyalty. *Haggard*, 2007 WL 9711143, at *3. And even assuming she was merely an employee, Ms. Hall would still owe a duty of loyalty to Exemplar. *United Built Homes*, 2021 WL 6328014, at *3. Although Exemplar does not specify how Ms. Hall allegedly breached her duty, there are at least two possible options within its counterclaim: her attempt to access the disputed Clio account and subsequent denial of access to Exemplar, and her alleged deletion of Exemplar's data.[13] Dkt. 15 at 9. Whether or not either of these allegations rise to the level of a breach of

---

[12] Although Exemplar alleges that Ms. Hall had multiple fiduciary duties, the only one actually at issue is Ms. Hall's fiduciary duty to Exemplar. Even assuming that Ms. Hall could have a fiduciary duty to Exemplar's employees or data separate from her duty to Exemplar itself, a plaintiff may only recover for breach of the fiduciary relationship between it and the defendant, not one between the defendant and a third party. *N. Am. Ins. Agency, Inc.*, 2013 WL 6150781, at *8.

[13] Any theory that Ms. Hall breached her fiduciary duty by soliciting firm clients could not be a basis for a breach action for the same reasons discussed in sections III(B)(1) and III(B)(3), *supra*.

14

No. 25-cv-421

fiduciary duty is a factual question and not applicable at this stage. Exemplar has stated a claim for breach of fiduciary duty, and the Court must deny Ms. Hall's motion to dismiss this claim.

5

Last, Ms. Hall asserts that none of Exemplar's claims can apply to Hall Law. Dkt. 28 at 5-6. She points out that Exemplar mentions Hall Law only twice in its counterclaims, both times as the entity for which she allegedly solicited Exemplar clients to depart. *Id.* (citing Dkt. 19 at 9-10). Exemplar "concede[s] that Hall Law did not have a contractual agreement with Exemplar" and withdraws its claim for breach of contract against Hall Law, leaving only its claims for malicious interference and breach of fiduciary duty. Dkt. 30 at 2 n.1. For Exemplar's malicious interference with contract claim, it has not pleaded sufficient facts to plausibly state a claim against Ms. Hall. *See* § III(B)(3), *supra*. It also has not pleaded facts to allege that Hall Law is separately liable for malicious interference. Dkt. 19. Hall Law cannot be held liable for Ms. Hall's actions on Exemplar's theory if her actions were not tortious, and so Hall Law cannot be held liable for malicious interference with contract.

Exemplar also restates its claim for breach of fiduciary duty against Hall Law on the theory that Ms. Hall was acting on Hall Law's behalf when she allegedly breached her fiduciary duty. Dkt. 19 at 10-11. Unlike its malicious interference with contract claim, Exemplar has stated a claim against Ms. Hall for breach of fiduciary duty, so the Court moves to consider its legal argument that Hall Law is liable for her alleged breach. *See* § III(B)(4), *supra*. Exemplar argues that "corporate acts or contracts on its behalf by a person or persons owning all or practically all the stock are binding upon the corporation." Dkt. 30 at 2 (citing *Henry Bldg. Co. v. Cowman*, 1961 OK 75, ¶ 17, 363 P.2d 208, 212). But considering this quote in context, the Oklahoma Supreme Court is discussing "the trend of authority" on the issue; in fact, this quote is commentary on the Supreme Court of California's opinion in *Wenban Estate v. Hewlett*, 193 Cal. 675, 696 (1924), not an independent statement of

Oklahoma law. *Henry Bldg. Co.*, 1961 OK 75, ¶¶ 16-17, 363 P.2d 208, 212. And *Henry Building Company* limits a court's ability to "disregard the distinct existence" of a corporation and treat the corporation and its owner "as identical" only "when necessary to circumvent fraud, protect the rights of third persons, and accomplish justice." 1961 OK 75, ¶ 18, 363 P.2d 208, 213 (quoting *Mid-Continent Life Ins. Co. v. Goforth*, 1943 OK 244, ¶ 10, 193 Okla. 314, 143 P.2d 154, 157). No part of Exemplar's counterclaims indicate that it is "necessary" to disregard Hall Law's independent existence to "circumvent fraud, protect the rights of third persons, or accomplish justice" and so the Court will not do so. Because the Court treats Hall Law as a separate legal entity from Ms. Hall, and because Exemplar has not alleged an independent basis for Hall Law to owe it a fiduciary duty, Exemplar's claim against Hall Law fails as a matter of law.

## IV

For the reasons given above, Ms. Mullins's and Mr. Marston's motion to dismiss [Dkt. 15] is denied. The Court grants Ms. Hall's motion to dismiss Exemplar's breach of contract and malicious interference counterclaims against her, and grants her motion to dismiss all counterclaims against Hall Law. [Dkt. 28]. The Court denies Ms. Hall's motion to dismiss Exemplar's breach of fiduciary duty claim. Exemplar may file amended counterclaims subject to the findings in this opinion by February 27, 2026. If it does not do so by that date, this order will become final.

DATED this 6th day of February 2026.

JOHN D. RUSSELL
*United States District Judge*