# United States District Court
## for the Northern District of Oklahoma

---

Case No. 25-cv-421-JDR-SH

---

Ashlee Hall; Hall Law Group, PLLC,

*Plaintiffs*,

*versus*

Christopher Marston; Diana Mullins; Exemplar Law, LLC; Exemplar Companies, PBC,

*Defendants*.

---

## OPINION AND ORDER

---

Plaintiffs Ashlee Hall and Hall Law Group, PLLC, allege that Defendants Christopher Marston, Diana Mullins, Exemplar Law, LLC, and Exemplar Companies, PBC[1] conspired to deny Ms. Hall access to her legal clients after she left Exemplar Law; as a result, Plaintiffs allege federal and state law causes of action against the Defendants. Dkt. 2 at 30-51.[2] After the Court granted in part Ms. Hall's motion to dismiss the counterclaims against her, Exemplar filed amended counterclaims. Dkt. 38. Ms. Hall now moves to dismiss all but one of those counterclaims against her and all counterclaims against Hall Law. Dkt. 42. The Court grants her motion, in part, on Exemplar's breach of contract and malicious interference with contractual relations claims, on all claims against Hall Law, and denies her motion for all other relief.

---

[1] The Court will refer to Defendants collectively as "Exemplar."

[2] All citations use CM/ECF pagination.

No. 25-cv-421

## I[3]

Ms. Hall alleges that she joined Exemplar as its head of tax law in February 2025. Dkt. 2 at 2. As part of her employment agreement, Exemplar and Ms. Hall agreed that her pre-existing clients were to continue to be represented by her as part of her personal book of business, and she continued to be those clients' attorney of record before the IRS. *Id.* at 3. Prior to her employment, Ms. Hall established accounts with legal and tax software providers Clio and PitBullTax to maintain and manage client matters, communications, contacts, and confidential information. *Id.* Upon joining Exemplar Law, Ms. Hall elected to continue using her existing Clio and PitBullTax accounts to service her pre-existing client base. *Id.* Ms. Hall alleges that she never received new accounts or sign-in information for Clio or PitBullTax from Exemplar and continued to use her personal accounts licensed to Hall Law and her. *Id.* at 4. Ms. Hall also states that she never provided her Clio login information to Exemplar or any Exemplar employees but shared her login credentials to PitBullTax with Ms. Mullins "to change billing information . . . and add requisite additional licenses." *Id.*

Ms. Hall resigned from Exemplar in July 2025, less than five months after she joined the firm, citing Exemplar's failure to provide her with "operational and staffing support" to manage a tax law division. *Id.* She alleges that after her resignation, Exemplar employees, including Ms. Mullins, "gained unauthorized access to [her] C[lio] and PitBullTax accounts and changed [her] login credentials to that of Exemplar's CEO Mr. Marston." *Id.* at 4, 15. Clio and PitBullTax subsequently refused to restore Ms. Hall's access to the accounts without either a court order or written agreement between her and Exemplar. *Id.* at 5. Ms. Hall then sent Mr. Marston a cease-and-desist letter to restore her access to the accounts; Mr. Marston responded by threatening

---

[3] This section summarizes the allegations in Ms. Hall's complaint and is not relevant to the pending motion to dismiss the amended counterclaim. The Court provides it solely for context.

No. 25-cv-421

legal action against Ms. Hall. *Id.* at 19-20. Ms. Hall alleges that she "experienced severe anxiety, fear, stress, panic, nervousness, concern, and desperation" along with "severe sleep deprivation and mental anguish" due to her inability to conduct her business and represent her clients because of her exclusion from her Clio and PitBullTax accounts. *Id.* at 15-16.

## II

In its amended counterclaim, Exemplar alleges that Ms. Hall was employed by the firm from February through June 2025 and was a fiduciary who shared in the firm's profits. Dkt. 38 at 2. It also alleges that Ms. Hall signed a "Non-Solicitation and Client Buyout Agreement" with Exemplar when she joined the company, which included a "Customer Buy-Out" provision requiring Ms. Hall to pay Exemplar a "Buy-Out fee of 150% of the greater of either the 12-month trailing gross revenues from the solicited Customer or the 12 month gross revenues following the date upon which [Ms.] Hall accept[ed] business from the Customer." *Id.*

Exemplar alleges that after Ms. Hall was hired, she asked Exemplar to incorporate her Clio account into Exemplar's business model, and they agreed to do so. But after she departed, she could not regain access to Clio and alleges that Exemplar was not authorized to access the account. *Id.* at 3. Because of this dispute, Clio suspended the account. *Id.* Exemplar also alleges that Ms. Hall solicited Exemplar clients to leave with "false and misleading claims related to Exemplar's ability to provide tax and related services to its clients" and enlisted a legal assistant with the firm to assist with the solicitation. *Id.* Exemplar further pleads "[u]pon information and belief" that Ms. Hall deleted client records and illicitly received and retained funds from Exemplar clients related to her work at Exemplar. *Id.*

## A

To survive a motion to dismiss, Exemplar's counterclaims must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell*

No. 25-cv-421

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The allegations must be enough that, if assumed to be true, the [counterclaimant] plausibly (not just speculatively) has a claim for relief." *Robbins*, 519 F.3d at 1247. In other words, the Court must determine whether, taking all well-pleaded allegations as true, the counterclaim provides a "reason to believe that [Exemplar] has a reasonable likelihood of mustering factual support for [its] claims." *Ridge at Red Hawk, L.L.C. v. Schnieder*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## B

Exemplar asserts claims against Ms. Hall for breach of contract, malicious interference with contractual relations, breach of fiduciary duty, conversion, violation of the Computer Fraud and Abuse Act, and violation of the Stored Communications Act. Dkt. 38 at 3-7. Ms. Hall moves to dismiss all of Exemplar's claims except the breach of fiduciary duty claim that this Court previously permitted to proceed in its order on Ms. Hall's prior motion to dismiss. Dkt. 42 at 1-2. She also moves to dismiss all claims against Hall Law. *Id.* at 11. The Court addresses each in turn.

### 1

Ms. Hall first argues that the buyout agreement clause is unenforceable for the same reasons the Court held the non-solicitation clause was unenforceable in the prior opinion—that it violates Oklahoma ethics rules permitting clients to choose their representation. Dkt. 42 at 5. Exemplar responds that the buyout agreement clause was severable from the non-solicitation clause and, therefore, there is no basis for Ms. Hall's motion to dismiss. Dkt. 46 at 2-3.

The Oklahoma Rules of Professional Conduct expressly prohibit employment agreements that "restrict[] the rights of a lawyer to practice after termination of the [employment] relationship." OK ST RPC Rule 5.6. The buyout agreement requires Ms. Hall pay Exemplar a "Buy-Out fee of 150% of the greater of either the 12-month trailing gross revenues from the solicited

4

No. 25-cv-421

Customer or the 12-month gross revenues following the date upon which [Ms.] Hall accept[ed] business from the Customer." Dkt. 38 at 2. In essence, it requires an attorney leaving Exemplar to not only disgorge all profits they could make from a client in the first year of the relationship but also to pay an *additional* fifty percent of those profits to Exemplar. Enforcing such a provision would practically prevent any attorney from ever soliciting a client from their prior firm because they would not see any economic value from the client for over a year and, thus, impermissibly restricts the right of attorneys to practice and the right of clients to choose their counsel. This provision is nothing more than an attempt to end-run Oklahoma's Rules of Professional Conduct, and the Court will not enforce it. Ms. Hall's motion to dismiss the breach of contract counterclaim is granted.

2

Next, Ms. Hall argues that Exemplar has not alleged facts to state a claim that she maliciously interfered with Exemplar's contractual relations. To state a claim for malicious interference with contractual relations, a party must show "[(1)] that the plaintiff had a business or contractual right that was interfered with, [(2)] that the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable, and [(3)] that damage was proximately sustained as the result of interference." *James Energy Co. v. HCG Energy Corp.*, 1992 OK 117, ¶ 29, 847 P.2d 333, 340, *as modified on reh'g* (Mar. 2, 1993). Exemplar alleges that Ms. Hall "solicited Exemplar clients to leave Exemplar and to join her at Hall PLLC using false and misleading claims related to Exemplar's ability to provide tax and related services to its clients." Dkt. 38 at 3. As "an example" of Ms. Hall's alleged interference, Exemplar states that Ms. Hall "converted over half ($115,000.00) of Exemplar's fixed price agreement with Exemplar Customers Patricia and Stephen Murray." *Id*.

But the Court notes a causation problem in Exemplar's alleged damages. Although Exemplar provides the Murrays' fixed price agreement as an

No. 25-cv-421

"example" of a contract with which Ms. Hall interfered, it does not actually plead that Ms. Hall solicited the Murrays or that she told them that Exemplar did not provide tax law services. *Id.* All it pleads is that there was a contract with the Murrays and that Ms. Hall "converted" a portion of Exemplar's fee for services. *Id.* Even if Ms. Hall did convert the fee, there are many ways she could have done so that would not qualify as malicious interference, so the mere allegation that she converted the fee does not show causation.

The Court recognizes that the location of the allegation in the counterclaim implies that Ms. Hall solicited the Murrays and told them that Exemplar did not provide tax law services. *Id.* But mere implications are not facts upon which relief can be granted, and the Court will not "supply additional factual allegations to round out" Exemplar's counterclaim. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Exemplar has not actually pleaded facts connecting the Murrays' contract with their allegations of malicious interference with contract and therefore has not alleged it suffered damages from Ms. Hall's alleged interference.

Even assuming that Exemplar has sufficiently stated that there were contracts with which Ms. Hall interfered and that interference was wrongful, Exemplar's only damages allegation is insufficiently connected to the alleged interference to show proximate causation.[4] The Court grants Ms. Hall's motion to dismiss the malicious interference with contract claim.

### 3

Next, Ms. Hall moves to dismiss Exemplar's claims that she converted Exemplar's data and violated the Stored Communications Act and Computer Fraud and Abuse Act while doing so, on the basis that claims upon

---

[4] Exemplar separately states that Ms. Hall's alleged malicious interference "damaged Exemplar in an amount to be proven at trial but reasonably believed to exceed $75,000." Dkt. 38 at 4. But simply stating a speculative amount of damages without pleading that Ms. Hall's alleged misrepresentations caused clients to terminate their relationship with Exemplar, or other non-speculative damages, is likewise insufficient.

No. 25-cv-421

"'information and belief' must set forth the factual basis for such belief to qualify as a factual allegation." Dkt. 42 at 9-11 (quoting *United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc.*, 232 F.3d 902 (Table) (10th Cir. 2000)). But *Schwartz* and the cases it cites are about allegations of fraud that are subject to a higher standing under Rule 9(b) of the Federal Rules of Civil Procedure. *Id.* Under those circumstances, "allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge," but the allegations must still provide the "factual basis for the plaintiff's belief." *Id.*

Conversion is not subject to a heightened pleading standard under Rule 9(b). Nor are violations of the Stored Communications Act and the Computer Fraud and Abuse Act. Exemplar has alleged that Ms. Hall accessed and deleted its confidential information, including "confidential physical files, a computer server, and software" to "sabotage" its business activities and prevent it from communicating with clients. Dkt. 38 at 3, 5-6. Even if some of these allegations are done "upon information and belief," the Rules do not require Exemplar to lay out the factual basis for that belief because there is no heightened pleading burden applicable to these claims.

Alternatively, Ms. Hall cites cases indicating that allegations based upon information and belief are not sufficient to plead facts that are presumably in the pleading party's personal knowledge. *Id.* at 8-9 (citing *Reddy v. Essentia Ins. Co.*, No. 21-cv-00433-RMR-MEH, 2021 WL 3742243, at \*6 (D. Colo. Aug. 24, 2021) and *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1244, n. 4 (D. Colo. Mar. 26, 2014)). But the allegations for which Exemplar relies upon "information and belief" are allegations about Ms. Hall's actions. Based on the complaint and the alleged counterclaims, Exemplar would not have personal knowledge of Ms. Hall's alleged actions and so was not prevented from relying upon "information and belief" in its pleadings. The Court denies Ms. Hall's motion to dismiss the conversion, Stored Communications Act, and Computer Fraud and Abuse Act claims.

No. 25-cv-421

4

Last, Exemplar levies all counterclaims against both Ms. Hall and Hall Law. Hall Law asserts that none of Exemplar's claims against it can survive based on this Court's prior order. Dkt. 42 at 11 (citing Dkt. 37 at 16). Exemplar does not dispute this contention in its response, *see* Dkt. 46, and the Court agrees with Hall Law for the reasons stated in this Court's prior order. Dkt. 37 at 16. The Court grants the motion to dismiss all claims against Hall Law.

III

The Court grants Ms. Hall's motion to dismiss [Dkt. 42] Exemplar's breach of contract and malicious interference with contractual relations claims. The Court denies Ms. Hall's motion to dismiss the conversion, Computer Fraud and Abuse Act, and Stored Communications Act claims. The Court dismisses all claims against Hall Law.

DATED this 15th day of July 2026.

JOHN D. RUSSELL
*United States District Judge*